## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ELIZABETH A. THOMPSON,           )<br>                                                          )<br>               Plaintiff,                           )<br>     vs.                                              )          1:06-cv-1510-RLY-WTL<br>                                                          )<br>MICHAEL J. ASTRUE, Commissioner  )<br> of the Social Security Administration,   )<br>                                                          )<br>               Defendant.[1]                      ) | |

### ENTRY DISCUSSING COMPLAINT FOR JUDICIAL REVIEW

Elizabeth A. Thompson ("Thompson") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

### I. BACKGROUND

Thompson applied for DIB on March 6, 2003, alleging an onset date of February 28, 2003. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on April 25, 2005. Thompson was present, accompanied by her non-attorney representative. Medical and other records were introduced into evidence. Thompson, her husband, and a vocational expert testified. The ALJ denied Thompson's application on June 20, 2006. On September 8, 2006, the Appeals Council denied Thompson's request for review of the ALJ's decision, making the ALJ's decision final. *See Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d) of the *Federal Rules of Civil Procedure,* Michael J. Astrue, in his official capacity only, is the proper defendant in this action.

The ALJ's decision included the following findings: (1) Thompson meets the insured status requirements of the Act through December 31, 2008; (2) Thompson had not engaged in substantial gainful activity at any time relevant to the ALJ's decision; (3) Thompson had "severe" impairments of cervical degenerative disc disease with left arm impairment, and had nonsevere impairments consisting of depression and fibromyalgia; (4) Thompson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Thompson had the residual functional capacity ("RFC") to perform light exertional work with the following restrictions: no more than occasional bending, squatting, kneeling, stooping, and crawling; no repeated forceful gripping with her left hand; and one day off per month; (6) light work means: lifting or carrying 10 pounds frequently; lifting or carrying 20 pounds occasionally; standing or walking, off and on, for six hours during an eight hour work day; intermittent sitting; and using hands and arms for grasping, holding and turning objects (20 C.F.R. § 404.1567(b) and Social Security Ruling 83-10); and (7) Thompson was capable of performing past relevant work as an assembler, and this work did not require the performance of work-related activities precluded by her RFC. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Thompson had not been under a "disability," as defined in the Act, from February 28, 2003, through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

2

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

The ALJ determined that although Thompson had severe cervical degenerative disc disease with left arm impairment, she was capable of performing her past relevant work as an assembler. Thompson argues that the ALJ improperly weighed the evidence of her degenerative disc disease, the ALJ should have considered the functional capacity evaluation completed on October 27, 2004, the vocational expert's opinion about her ability to perform past relevant work should not be accepted, and that according to the grid, she is disabled.

Thompson disagrees with the ALJ's evaluation of the medical evidence. Thompson notes that on May 20, 2003, Dr. David Schwartz reviewed her MRI and stated that she had multilevel degeneration, spondylosis with cervical neck pain, no surgery recommended. (R. at 106). The ALJ did discuss this report and noted that Dr. Schwartz stated that Thompson had "multilevel degeneration.  There is no significant disk herniation or compression that would correlate with any of her symptoms." (R. at 20, 106). The ALJ also noted Dr. Schwartz' conclusion that Thompson had spondylosis with cervical neck pain, but that he would not recommend any type of surgery. *Id.* Thompson argues that it should be apparent from the changes noted in the MRIs of July 1, 2002 and May 6, 2003, that her disease process was progressive and had worsened. The ALJ discussed the findings of both MRIs. (R. at 19, 20). Dr. Schwartz' more recent opinion was that there was no disc herniation or compression that would correlate with any of her symptoms. Indeed, even if Thompson's disease process had worsened, that would not be dispositive as to whether she is "disabled" as defined in the Act.

The ALJ reviewed the reports of various consulting and treating physicians, noting that conservative treatments had been used and that the objective findings did not support limitations greater than what he had assessed. (R. at 19-22). The ALJ determined that Thompson had "severe" degenerative disc disease, and he accommodated this by limiting her to only occasional bending, squatting, kneeling, stooping, and crawling. (R. at 20). He also limited her to light exertional work. (R. at 21). The ALJ reviewed the records and stated that Thompson's neurological findings had been essentially normal with no focal sensory or neurological deficits noted. (R. at 20). The ALJ concluded that the evidence of record and the lack of significant neurological deficits supported a finding that Thompson could perform light exertional work. (R. at 21). Although the ALJ did accept that Thompson had a variety of physical and mental symptoms, he did not find them to be of such frequency, duration or intensity as to prevent her from working at the RFC level he assessed.

The ALJ discussed the opinions of treating physician Dr. Patel, noting that his opinions were not supported by significant clinical or laboratory abnormalities or by substantial other evidence of record. (R. at 22). The ALJ declined to give Dr. Patel's opinions that Thompson could not work controlling weight. *Id.* Treating physician evidence is not controlling and is just one more piece of evidence to consider if well-supported evidence is introduced which contradicts the opinion of the treating physician. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). Moreover, the ALJ properly noted that Dr. Patel's opinion that Thompson was "disabled" was not controlling because the ultimate determination as to a claimant's disability is reserved to the Commissioner. (R. at 22, citing 20 C.F.R. § 404.1527(e) and Social Security Ruling 96-2p).

The court must decline any invitation to resolve conflicts in or reweigh the evidence. *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."). In sum, the ALJ's evaluation of Thompson's degenerative disc disease is supported by substantial evidence.

Thompson next contends that the ALJ should have included in the hypothetical posed to the vocational expert the limitations contained in the RFC assessment completed on October 27, 2004. The Commissioner points out that the RFC evaluation of October 27, 2004, was completed by a physical therapist, not an acceptable medical source for purposes of disability benefits evaluations. *See* 20 C.F.R. § 404.1513(a). In any event, the ALJ did discuss the October 2004 report, noting that it suggested Thompson would benefit from a consistent exercise program to increase energy level, functional strength, and overall mobility. (R. at 21-22). The report did not indicate that Thompson was incapable of sustaining work, rather, it indicated that Thompson was capable of working with some restrictions. (R. at 21-22, 300-302). The ALJ adequately evaluated the opinion of the physical therapist.

Thompson also argues that the opinion of the vocational expert that Thompson could perform her previous factory job should not be accepted. Thompson asserts that on August 29, 2003, she was placed on disability by her employer when the company physician found her to be "totally and permanently disabled within the meaning of [the company pension plan]." (R. at 298). Thompson asserts that the reality of the situation is that she was, in fact, not able to perform her past work. Although the Commissioner did not respond to this argument, the standard used to determine "disability" under the company pension plan is not part of the record. There is no evidence that such standard is the same as the federal criteria used to determine whether a claimant is "disabled" as defined in the Act. *See Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 610 (7th Cir. 2007) (recognizing that the definition of "totally disabled" differs between ERISA plans and the evaluation of claims of disability under the Act.).  Accordingly, Thompson's contention that her employer's disability determination should control this case is not persuasive.

Finally, Thompson argues that she is "disabled" according to the "grid." *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, Medical-Vocational Guideline Rule 202.04. Thompson contends that pursuant to Rule 202.04, if she is limited to light work as a result of severe medically determinable impairments, is of advanced age (55 or over), has a high

4

school education or more, and has unskilled or no previous work experience, then she is presumptively disabled. The vocational expert did testify that Thompson's prior work was light, unskilled work. (R. at 336). Again, the Commissioner did not respond to this argument. The "grid" that Thompson relies upon, however, applies only to "individuals of advanced age who can no longer perform vocationally relevant past work." Rule 202.00(c). Here, the ALJ determined that Thompson could perform her past relevant work as an assembler.

In determining Thompson's eligibility for benefits, the ALJ applied the proper analytical methodology and fairly considered and weighed the evidence. The ALJ's decision was based on consideration of: (1) Thompson's age, education, and work history; (2) Thompson's history of diagnoses, treatment, medications, and evaluations; (3) Thompson's own account of her conditions, capabilities, limitations, symptoms and daily routine; and (4) the testimony of Thompson and a vocational expert.

The ALJ explained his rationale for evaluating the opinions and evidence of record. There was no significant evidence, symptom, complaint, or issue which the ALJ's decision overlooked. Substantial evidence supports the ALJ's findings of fact and identification and assessment of Thompson's impairments, and there was no reversible error of law in the manner in which the evidence was evaluated. As is the case here, an "ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). Here the ALJ sufficiently articulated his assessment of the evidence to enable the court to "trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (quoting *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996)). Substantial evidence supports the ALJ's finding that Thompson was not disabled as defined in the Act at any time through the date of the ALJ's decision.

### III. CONCLUSION

There was no reversible error in the assessment of Thompson's application for DIB. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. In these circumstances, Thompson is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 1/9/2008

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana